AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 1-7-2022)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| Information associated with Three Target | ) | Case No.   MJ23-70 |
| Telephones (TT1, TT2 and TT4), for | ) | |
| Investigation of 21 U.S.C. §§ 841 and 846 | ) | |

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachments A-1, A-2 and A-3, located in the Western District of Washington, there is now concealed property and evidence described in Attachments B-1, B-2 and B-3. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒   evidence of a crime;

☐   contraband, fruits of crime, or other items illegally possessed;

☒   property designed for use, intended for use, or used in committing a crime;

☐   a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841, 846 | Possession with Intent to Distribute and Conspiracy to Distribute Controlled Substances |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits. Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒   Delayed notice of 90 days (give exact ending date if more than 30 days: May 17, 2023) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Steven Meyer, Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by telephone/

Date: February 16, 2023

_____
*Judge's signature*

Michelle L. Peterson, United States Magistrate Judge
*Printed name and title*

City and state: Seattle, Washington

USAO # 2022RO1233

**ATTACHMENT A-1**

**Property to Be Searched and Subscriber/Subject Information**

1.      Records and information associated with the following cellular phone: **Target Telephone 1** (hereinafter referred to as **TT1**), assigned call number **(360) 552-1013**, with no listed subscriber, that are in the custody or control of Verizon Wireless a company headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The subscriber/customer of **TT1** is believed to be used by Charlie VARGO. The identity of the person who is the subject of the criminal investigation is Charlie VARGO.

2.      The Target Telephone (**TT1**).

3.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

**ATTACHMENT B-1**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding Target Telephone 1. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.    Section I: Information to be Disclosed by Verizon Wireless**

1.    **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A-1:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long-distance telephone connection records beginning on June 15, 2022, through the date this warrant is served;

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions beginning on June 15, 2022, through the date this warrant is served;

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

1 Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

2 Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers

3 ("IMSI"), or International Mobile Equipment Identities ("IMEI");

4        g.    Other subscriber numbers or identities (including the registration

5 Internet Protocol ("IP") address); and

6        h.    Means and source of payment for such service (including any credit

7 card or bank account number) and billing records.

8     2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records**

9 **to Be Provided for a Period of 45 Days.**

10        a.    Verizon Wireless shall install and monitor pen-trap devices to

11 record, decode, and/or capture dialing, routing, addressing, and signaling information

12 associated with each communication to or from the Target Telephone including the date,

13 time, and duration of the communication, and the following, without geographic limit and

14 without notice to the subscriber:

15          (i)    IP addresses associated with the cell phone device or devices

16                used to send or receive electronic communications;

17          (ii)    Any unique identifiers associated with the cell phone device or

18                devices used to make and receive calls with the cell phone

19                number described in Attachment A-1, or to send or receive

20                other electronic communications, including the ESN, MEIN,

21                IMSI, IMEI, SIM, MSISDN, or MIN;

22          (iii)    IP addresses of any websites or other servers to which the cell

23                phone device or devices connected; and

24          (iv)    Source and destination telephone numbers and email

25                addresses.

26        b.    On a 24-hour-a-day basis, for the duration of the authorized pen-trap

27

Attachment A -- PAGE 2

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

devices, Verizon Wireless shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices: published or non-published subscriber names and addresses, including billing addresses.

3. **Historical Cell Site Location Information.**

a. All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account from June 15, 2022, through the date this warrant is served, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received. This information is to be provided irrespective of the application, name, or report utilized by Verizon Wireless. Accordingly, this information includes the following data sets to the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b. The physical address and coverage maps of cell towers used by the Target Telephone.

4. **Prospective Cell Site Location Information.**

a. All information about the location of the Target Telephone described in Attachment A for **a period of 45 days**, during all times of day and night. This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A-1. This information also includes the following data sets to

1    the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD, LOCDBOR,
2    EVDO, True Call, ALULTE, and Timing Advance.

3          b.    The physical address and coverage maps of cell towers used by the
4    Target Telephone.

5        5.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

6          a.    All information about the location of the Target Telephone described
7    in Attachment A-1 for **a period of 45 days**, during all times of day and night. This
8    information includes: all available E-911 Phase II data, GPS data, latitude-longitude data,
9    and other precise location information, as well as all data about which "cell towers" (i.e.,
10    antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the
11    towers) received a radio signal from the cellular telephone(s) or account(s) described in
12    Attachment A-1.

13          b.    The physical address and coverage maps of cell towers used by the
14    Target Telephone.

15        To the extent that the location information described in the previous paragraphs
16    (hereinafter, "Location Information") is within the possession, custody, or control of
17    Verizon Wireless, Verizon Wireless is required to disclose the Location Information to
18    the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2)
19    and 3124(a)-(b), Verizon Wireless must furnish the government all information, facilities,
20    and technical assistance necessary to accomplish the collection of the Location
21    Information unobtrusively and with a minimum of interference with Verizon Wireless's
22    services. The government shall compensate Verizon Wireless for reasonable expenses
23    incurred in furnishing such facilities or assistance.

24    **II.**    <u>**Section** II: Information to Be Seized by the Government</u>

25        1.    All information described above in Section I that constitutes evidence of
26    violations of 21 U.S.C. §§ 841 and 846 involving the user of **TT1** and the user's

27

Attachment A -- PAGE 4

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

associates.

2.      All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.      All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.      Location Information regarding the Target Telephone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Verizon Wireless in order to locate the things particularly described in this Warrant.

Attachment A -- PAGE 5
USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A-2**

**Property to Be Searched and Subscriber/Subject Information**

5.      Records and information associated with the following cellular phone: **Target Telephone 2** (hereinafter referred to as **TT2**), assigned call number **(360) 535-4507**, with no listed subscriber, that are in the custody or control of Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The subscriber/customer of **TT2** is believed to be Charles VARGO. The identity of the person who is the subject of the criminal investigation is Charles VARGO.  and believed to be used by Charles VARGO.

6.      The Target Telephone (**TT2**).

7.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B-2

### Particular Things to be Seized

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding Target Telephone 2. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.     Section I: Information to be Disclosed by Verizon Wireless**

8.     **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A-2:

a.     Names (including subscriber names, user names, and screen names);

b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.     Local and long-distance telephone connection records beginning on June 15, 2022, through the date this warrant is served;

d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions beginning on June 15, 2022, through the date this warrant is served;

e.     Length of service (including start date) and types of service utilized;

f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

1  Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

2  Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers

3  ("IMSI"), or International Mobile Equipment Identities ("IMEI");

4         g.    Other subscriber numbers or identities (including the registration

5  Internet Protocol ("IP") address); and

6         h.    Means and source of payment for such service (including any credit

7  card or bank account number) and billing records.

8      9.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records**

9  **to Be Provided for a Period of 45 Days.**

10         a.    Verizon Wireless shall install and monitor pen-trap devices to

11  record, decode, and/or capture dialing, routing, addressing, and signaling information

12  associated with each communication to or from the Target Telephone including the date,

13  time, and duration of the communication, and the following, without geographic limit and

14  without notice to the subscriber:

15           (v)    IP addresses associated with the cell phone device or devices

16               used to send or receive electronic communications;

17           (vi)    Any unique identifiers associated with the cell phone device or

18               devices used to make and receive calls with the cell phone

19               number described in Attachment A-2, or to send or receive

20               other electronic communications, including the ESN, MEIN,

21               IMSI, IMEI, SIM, MSISDN, or MIN;

22          (vii)    IP addresses of any websites or other servers to which the cell

23               phone device or devices connected; and

24         (viii)    Source and destination telephone numbers and email

25               addresses.

26         b.    On a 24-hour-a-day basis, for the duration of the authorized pen-trap

27

Attachment B -- PAGE 2

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    devices, Verizon Wireless shall provide the following records for those subscribers

2    whose identifiers are obtained pursuant to the use of the pen-trap devices: published or

3    non-published subscriber names and addresses, including billing addresses.

4            10.      **Historical Cell Site Location Information.**

5                a.      All records and other information (**not including the contents of**

6    **communications**) relating to wire and electronic communications sent or received by the

7    Account from June 15, 2022, through the date this warrant is served, including:

8                i.      the date and time of the communication, the method of the

9    communication, and the source and destination of the communication (such as the source

10    and destination telephone numbers (call detail records), email addresses, and IP

11    addresses); and

12                ii.      historical cell site information regarding the cell tower and

13    antenna face (also known as "sectors") through which the communications were sent and

14    received. This information is to be provided irrespective of the application, name, or

15    report utilized by Verizon Wireless. Accordingly, this information includes the following

16    data sets to the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD,

17    LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

18                b.      The physical address and coverage maps of cell towers used by the

19    Target Telephone.

20            11.      **Prospective Cell Site Location Information.**

21                a.      All information about the location of the Target Telephone described

22    in Attachment A-2 for **a period of 45 days**, during all times of day and night. This

23    information includes: precise location information, as well as all data about which "cell

24    towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces

25    of the towers) received a radio signal from the cellular telephone(s) or account(s)

26    described in Attachment A-2. This information also includes the following data sets to

27

Attachment B -- PAGE 3

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD, LOCDBOR,

2  EVDO, True Call, ALULTE, and Timing Advance.

3       b.    The physical address and coverage maps of cell towers used by the

4  Target Telephone.

5       12.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

6       a.    All information about the location of the Target Telephone described

7  in Attachment A-2 for **a period of 45 days**, during all times of day and night. This

8  information includes: all available E-911 Phase II data, GPS data, latitude-longitude data,

9  and other precise location information, as well as all data about which "cell towers" (i.e.,

10 antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the

11 towers) received a radio signal from the cellular telephone(s) or account(s) described in

12 Attachment A-2.

13       b.    The physical address and coverage maps of cell towers used by the

14 Target Telephone.

15      To the extent that the location information described in the previous paragraphs

16 (hereinafter, "Location Information") is within the possession, custody, or control of

17 Verizon Wireless, Verizon Wireless is required to disclose the Location Information to

18 the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2)

19 and 3124(a)-(b), Verizon Wireless must furnish the government all information, facilities,

20 and technical assistance necessary to accomplish the collection of the Location

21 Information unobtrusively and with a minimum of interference with Verizon Wireless's

22 services. The government shall compensate Verizon Wireless for reasonable expenses

23 incurred in furnishing such facilities or assistance.

24 **II.    Section II: Information to Be Seized by the Government**

25      All information described above in Section I that constitutes evidence of violations

26 of 21 U.S.C. §§ 841 and 846 involving the user of **TT2** and the user's associates.

27

Attachment B -- PAGE 4

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        13.     All non-content subscriber/account information provided pursuant to 18

2  U.S.C. § 2703(c).

3        14.     All non-content dialing, routing, addressing, and signaling information

4  provided pursuant to 18 U.S.C. §§ 3121-3127.

5        15.     Location Information regarding the Target Telephone.

6        Law enforcement personnel (who may include, in addition to law enforcement

7  officers and agents, attorneys for the government, attorney support staff, agency

8  personnel assisting the government in this investigation, and outside technical experts

9  under government control) are authorized to review the records produced by Verizon

10  Wireless in order to locate the things particularly described in this Warrant.

**ATTACHMENT A-3**

**Property to Be Searched and Subscriber/Subject Information**

1.      Records and information associated with the following cellular phone: **Target Telephone 4** (hereinafter referred to as **TT4**), assigned call number **360-620-9485 (TT4)**, with an unknown subscriber, that are in the custody or control of Verizon Wireless a company headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The subscriber/customer of **TT4** is believed to be Charles VARGO. The identity of the person who is the subject of the criminal investigation is Charlie VARGO.

2.      The Target Telephone (**TT4**).

3.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

## ATTACHMENT B-3

### Particular Things to be Seized

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding Target Telephone 4. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.    <u>Section I</u>: Information to be Disclosed by Verizon Wireless**

1.    **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long-distance telephone connection records beginning on June 15, 2022, through the date this warrant is served;

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions beginning on June 15, 2022, through the date this warrant is served;

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

g. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

h. Means and source of payment for such service (including any credit card or bank account number) and billing records.

2. **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 Days.**

a. Verizon Wireless shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Telephone including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

(i) IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

(ii) Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

(iii) IP addresses of any websites or other servers to which the cell phone device or devices connected; and

(iv) Source and destination telephone numbers and email addresses.

b. On a 24-hour-a-day basis, for the duration of the authorized pen-trap

Attachment B -- PAGE 2
USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   devices, Verizon Wireless shall provide the following records for those subscribers

2   whose identifiers are obtained pursuant to the use of the pen-trap devices: published or

3   non-published subscriber names and addresses, including billing addresses.

4         3.    **Historical Cell Site Location Information.**

5         a.    All records and other information (**not including the contents of**

6   **communications**) relating to wire and electronic communications sent or received by the

7   Account from June 15, 2022, through the date this warrant is served, including:

8               i.    the date and time of the communication, the method of the

9   communication, and the source and destination of the communication (such as the source

10  and destination telephone numbers (call detail records), email addresses, and IP

11  addresses); and

12              ii.   historical cell site information regarding the cell tower and

13  antenna face (also known as "sectors") through which the communications were sent and

14  received. This information is to be provided irrespective of the application, name, or

15  report utilized by Verizon Wireless. Accordingly, this information includes the following

16  data sets to the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD,

17  LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

18        b.    The physical address and coverage maps of cell towers used by the

19  Target Telephone.

20        4.    **Prospective Cell Site Location Information.**

21        a.    All information about the location of the Target Telephone described

22  in Attachment A for **a period of 45 days**, during all times of day and night. This

23  information includes: precise location information, as well as all data about which "cell

24  towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces

25  of the towers) received a radio signal from the cellular telephone(s) or account(s)

26  described in Attachment A. This information also includes the following data sets to the

Attachment B -- PAGE 3

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  extent that they are collected by Verizon Wireless: RTT, PLU, PCMD, LOCDBOR,

2  EVDO, True Call, ALULTE, and Timing Advance.

3       b.    The physical address and coverage maps of cell towers used by the

4  Target Telephone.

5       5.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

6       a.    All information about the location of the Target Telephone described

7  in Attachment A for **a period of 45 days**, during all times of day and night. This

8  information includes: all available E-911 Phase II data, GPS data, latitude-longitude data,

9  and other precise location information, as well as all data about which "cell towers" (i.e.,

10 antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the

11 towers) received a radio signal from the cellular telephone(s) or account(s) described in

12 Attachment A.

13      b.    The physical address and coverage maps of cell towers used by the

14 Target Telephone.

15     To the extent that the location information described in the previous paragraphs

16 (hereinafter, "Location Information") is within the possession, custody, or control of

17 Verizon Wireless, Verizon Wireless is required to disclose the Location Information to

18 the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2)

19 and 3124(a)-(b), Verizon Wireless must furnish the government all information, facilities,

20 and technical assistance necessary to accomplish the collection of the Location

21 Information unobtrusively and with a minimum of interference with Verizon Wireless's

22 services. The government shall compensate Verizon Wireless for reasonable expenses

23 incurred in furnishing such facilities or assistance.

24 **II.**    **Section II: Information to Be Seized by the Government**

25     1.    All information described above in Section I that constitutes evidence of

26 violations of 21 U.S.C. §§ 841 and 846 involving the user of **TT4** and the user's

27

Attachment B -- PAGE 4

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    associates.

2        2.      All non-content subscriber/account information provided pursuant to 18

3    U.S.C. § 2703(c).

4        3.      All non-content dialing, routing, addressing, and signaling information

5    provided pursuant to 18 U.S.C. §§ 3121-3127.

6        4.      Location Information regarding the Target Telephone.

7        Law enforcement personnel (who may include, in addition to law enforcement

8    officers and agents, attorneys for the government, attorney support staff, agency

9    personnel assisting the government in this investigation, and outside technical experts

10   under government control) are authorized to review the records produced by Verizon

11   Wireless in order to locate the things particularly described in this Warrant.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
# A SEARCH WARRANT AND PEN-TRAP ORDER

STATE OF WASHINGTON )
) ss
COUNTY OF PIERCE )

I, Steven Meyer, a Special Agent with the Drug Enforcement Administration ("DEA") in Tacoma, Washington, having been first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.    I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephones (collectively, the "Target Telephones"):

**Target Telephone 1** (hereinafter referred to as TT1), assigned call number **(360)552-1013**, with no listed subscriber, with service provided by Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, and believed to be used by Charles VARGO. TT1 is described herein and in Attachment A-1, and the location information to be seized is described herein and in Attachment B-1.

**Target Telephone 2** (hereinafter referred to as **TT2),** assigned call number **360-535-4507**. With no listed subscriber, with service provided by Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, and believed to be used by Charles VARGO. **TT2** is described herein and in Attachment A-2, and

the location information to be seized is described herein and in Attachment
B-2.

**Target Telephone 4** (hereinafter referred to as **TT4**), assigned call number
**(360) 620-9485**, with an unknown subscriber, and service provided by
Verizon Wireless, a wireless telephone service provider headquartered at
180 Washington Valley Road, Bedminster, New Jersey, and believed to be
used by Charles VARGO. **TT4** is described herein and in Attachment A-3,
and the location information to be seized is described herein and in
Attachment B-3.

ECPA

2.      The Court has jurisdiction to issue the proposed warrant under the
Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is
a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the
Court is a district court of the United States that has jurisdiction over the offense being
investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

Pen Register Act

3.      Because this warrant application additionally seeks the prospective
collection of information that falls within the statutory definitions of information
collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) &
(4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C.
§§ 3121-3127.

4.      The Court has jurisdiction to issue the requested pen-trap order because it is
a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2). Specifically, the Court
is a district court of the United States that "has jurisdiction over the offense being
investigated." 18 U.S.C. § 3127(2)(A)(i).

5.      This application includes all the information required by the Pen Register
Act. *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1). Namely, Exhibit 1 to this application is a

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 2
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

certification from Assistant United States Attorney Jocelyn Cooney that (1) identifies the Drug Enforcement Administration as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency. 18 U.S.C. § 3122(b). The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

6.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

7.      In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers. The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act. Accordingly, the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the Target Telephone without geographic limit.

8.      The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachments B1-3 of the requested warrant that Verizon, and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 3
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  unobtrusively and with minimum disruption of normal service. Any entity providing such

2  assistance shall be reasonably compensated by the Drug Enforcement Administration,

3  pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities

4  and assistance in furtherance of the warrant.

5      9.      **Through this application, the United States does not request and does**

6  **not seek to obtain the contents of any communications, as defined in 18 U.S.C.**

7  **§ 2510(8).**

8                    **AGENT BACKGROUND**

9      10.      I am a Special Agent (SA) with the Drug Enforcement Administration

10  (DEA) currently assigned to the Seattle Field Division, Tacoma Resident Office, and

11  have been so employed since March 2017. As such, I am an "investigative or law

12  enforcement officer of the United States" within the meaning of Title 18, United States

13  Code, Section 2510(7). Prior to my employment with the DEA, I worked as a Uniformed

14  Officer with the Secret Service in Washington, D.C. from June 2006 to April 2009. I

15  received formal training at the DEA Basic Agent Training in Quantico, Virginia. The

16  four-month Basic Academy included comprehensive, formalized instruction in, among

17  other things: basic narcotic investigations, drug identification and detection,

18  familiarization with federal narcotics laws, financial investigations and money

19  laundering, identification and seizure of drug-related assets, organized crime

20  investigations, physical and electronic surveillance, and undercover operations.

21      11.      During the course of my law enforcement career, I have been involved in

22  investigations of numerous criminal offenses, including the offenses involved in the

23  current investigation. I have participated in criminal investigations of illicit drug

24  trafficking organizations, ranging from street-level dealers to major dealers, to include

25  Mexico-based drug trafficking organizations. These investigations have also included the

26  unlawful importation, possession with intent to distribute, and distribution of controlled

27  substances; the related laundering of monetary instruments; the conducting of monetary

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 4
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses. These investigations have included use of the following investigative techniques: confidential informants; undercover agents; analysis of pen register, trap and trace, and toll records; physical and electronic surveillance; wiretaps; and the execution of search warrants. I have had the opportunity to monitor, listen to, and review transcripts and line sheets (prepared by linguists) documenting the content of intercepted conversations involving the trafficking of cocaine, heroin, methamphetamine, fentanyl, and other narcotics, by persons who used some form of code to thwart law enforcement. I have also interviewed defendants at the time of their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or confidential sources (informants) at proffer interviews who were experienced in speaking in coded conversations over the telephone. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of cellular telephones and other electronic devices to facilitate communications while avoiding law enforcement scrutiny.

12.    I have authored, planned, and participated in the execution of search warrants authorizing the search of locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, and vehicles. Additionally, I have authored and supervised the execution of dozens of tracking warrants, including multiple federal tracking warrant affidavits for vehicles and cellular telephones. I have testified at grand jury proceedings and written reports in the course of investigations. These investigations have resulted in numerous state and federal prosecutions of individuals who have possessed, imported, or distributed controlled substances, including methamphetamine, heroin, cocaine, suspected fentanyl pills, as well as the seizure of those illegal drugs and the proceeds from their sale.

13.    The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 5
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for a search warrant and pen register/trap and trace device, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

14.     Based upon my experience and training with the DEA, as well as conversations I have had with other agents and law enforcement officers who specialize in narcotics, gang, and firearms investigations, I am familiar with the methods, tactics, and techniques utilized by gang members/associates and narcotics traffickers.

15.     Based on my training and experience, I know drug traffickers often require the use of one or more communication facilities to negotiate times, places, schemes, and manners for coordinating their criminal activities, including drug trafficking, firearms trafficking, and other violent acts. I also know drug traffickers often use fraudulent information to subscribe to communication facilities, and frequently change communication facilities to thwart law enforcement efforts to intercept their communications.

16.     Based on my training and experience, and my discussions with other experienced officers and agents involved in gang, firearms, and drug investigations, I know that drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their associates. They prefer cellular telephones because they can be purchased without the location and personal information that land lines require. They can be easily carried to permit the user maximum flexibility in meeting associates and avoiding police surveillance. They can

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 6
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  also be passed between members of a gang or drug conspiracy to allow substitution when

2  one member leaves the area temporarily.

3      17.    The assigned number to the cellular telephone (known as the mobile

4  directory number or MDN), and the identifying telephone serial number (Electronic

5  Serial Number, or ESN; Mobile Identification Number, or MIN; International Mobile

6  Subscriber Identity, or IMSI; or International Mobile Equipment Identity, or IMEI are

7  important evidence because they reveal the service provider, allow us to obtain subscriber

8  information, and uniquely identify the telephone. This information can be used to obtain

9  toll records, to identify contacts by this telephone with other cellular telephones used by

10 co-conspirators, to identify other telephones used by the same subscriber or purchased as

11 a part of a package, and to confirm if the telephone was contacted by a cooperating

12 source or was intercepted on a wiretap here or in another district.

13     18.    Based on the facts set forth in this Affidavit, there is probable cause to

14 believe that violations of 21 U.S.C. §§ 841, 846 have been committed, are being

15 committed, and will be committed by Charles VARGO. There is also probable cause to

16 believe that VARGO is using **TT1**, **TT2** and **TT4** to facilitate criminal activities and that

17 the whereabouts of **TT1**, **TT2** and **TT4** over time and the location information described

18 in Attachment B-1, B-2 and B-3 will constitute evidence of those criminal violations and

19 will lead to the identification of locations where VARGO resides and frequents.

20 Obtaining the information sought in this Affidavit is necessary to further the investigation

21 into these offenses.

22                          **SOI RELIABILITY**

23     19.    There are two SOIs involved in this case. The first SOI (SOI 1) has

24 provided valuable and reliable information to DEA investigators for less than a year. SOI

25 1 provided valuable information regarding the VARGO DTO, which is operating out of

26 the Bremerton, Washington area. To date, agents have corroborated where VARGO is

27 currently living, which is information provided by SOI 1.  Agents have not found any of

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 7
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    SOI 1's statements to be untruthful or misleading. SOI 1 has a criminal record which

2    includes a felony conviction for financial fraud that occurred between 2010 and 2020 for

3    which he/she served a sentence for several months. Additionally, he/she has nineteen

4    other felonies and three misdemeanors relating to drug possession and theft for which

5    he/she has served a number of sentences. Further investigation of SOI 1 has unveiled

6    he/she has potentially committed Paycheck Protection Loan Fraud, though he/she is not

7    currently facing charges for this crime.

8        20.    The second SOI (SOI 2) is a resident of Port Orchard, WA.  SOI 2 has no

9    criminal history. SOI 2 provided a tip to the Tacoma Resident Office. SOI 2 is believed to

10   be a concerned parent of a known association of VARGO. Agents have no reason to

11   believe the information provided by SOI 2 is untruthful or misleading.

## CS RELIABILITY

13       21.    The Confidential Source (CS) is providing information and assistance to the

14   DEA in exchange for monetary payment and has been providing information to DEA

15   investigators for approximately three years. More specifically, the CS has provided

16   reliable information which has resulted in arrests and seizures of narcotics, including

17   methamphetamine, fentanyl, heroin, as well as firearms, and drug proceeds. This

18   information has benefited multiple law enforcement organizations to include agencies at

19   the Federal and State level. The information provided by the CS has been corroborated

20   and considered reliable. The CS has a criminal history that includes eight felony

21   convictions, 13 gross misdemeanor convictions and 10 misdemeanor convictions.

## PROBABLE CAUSE

### A.    Summary of DEA Investigation of the VARGO DTO

24       22.    The United States, including the DEA, is conducting a criminal

25   investigation of Charles VARGO and others regarding possible violations of 21 U.S.C.

26   §§ 841 and 846.  Agents first learned about the VARGO DTO from a previous

27   investigation.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 8
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

***VARGO Drug Associates Identified in Bremerton, Washington***

23.     On January 30, 2022, the Bremerton Police Department (BPD) and DEA Tacoma began investigating local drug distributors in Kitsap County named David BERRYHILL and Jamie KELLY.  Agents were notified by BPD officers that BERRYHILL and KELLY had sent narcotics through the mail using the United Postal Service (UPS). Specifically, on January 27, 2022, agents believed that BERRYHILL attempted to mail methamphetamine to suspected drug customers in North Dakota and the next day, January 28, 2022, KELLY attempted to mail methamphetamine and fentanyl pills to drug customers in North Dakota.

24.     Between January 2022 and June 2022, agents continued to investigate BERRYHILL and KELLY and learned they had likely made multiple trips to cities in North Dakota in order to supply drug customers.  Agents also believed that BERRYHILL and KELLY had regularly traveled to Arizona in order to pick up drugs from suppliers in the Phoenix area.  Additionally, agents conducted searches of BERRYHILL and KELLY in law enforcement databases and identified criminal histories for both.  Agents also learned that among the known drug associates for KELLY was her son named Charles VARGO, also known as Charlie.

***BERRYHILL and KELLY Arrest in Centralia, Washington***

25.     On June 14, 2022, agents identified BERRYHILL and KELLY traveling northbound in Oregon towards Washington in a white Toyota Tacoma, California plate 94029W2.  Following that, surveillance was assumed on the vehicle as it traveled from Oregon into Washington.  Agents believed BERRYHILL and KELLY were returning from Arizona where they had picked up a load of drugs.

26.     At approximately 11:37 a.m., officers with the Centralia Police Department (CPD) conducted a traffic stop on BERRYHILL's vehicle.  During the stop, a narcotics trained K-9 was deployed on the vehicle and there was an alert for the presence of drugs.  Following that, CPD personnel detained BERRYHILL and KELLY and seized the

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 9
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

vehicle pending a state search warrant. Shortly thereafter, CPD personnel were granted a search warrant for the vehicle and the subsequent search resulted in the seizure of approximately eight pounds of suspected methamphetamine and approximately ten thousand suspected fentanyl pills. CPD personnel arrested BERRYHILL and KELLY and took them into custody.

27.    On June 17, 2022, United States Magistrate Judge, the Honorable Theresa L. Fricke, authorized Federal arrest warrants for BERRYHILL and KELLY. Agents took BERRYHILL and KELLY into Federal custody and transported them to the Federal Detention Center (FDC) pending their initial appearance.

28.    On June 21, 2022, agents transported BERRYHILL and KELLY to the U.S. District Courthouse at 1717 Pacific Avenue, Tacoma, Washington, for their initial appearance. The United States Marshal Service then took custody of BERRYHILL and KELLY.

**B.    VARGO Identified as Leader of DTO**

29.    In October 2022, agents met with Source of Information (SOI) 1 who claimed to have information about a large drug trafficking organization (DTO) operating in multiple counties in Washington, to include Kitsap, Pierce, and Clallam. SOI 1 told agents that Charlie VARGO was the leader of the DTO and the group was selling large amounts of fentanyl pills and methamphetamine. SOI 1 explained that VARGO was the primary source of supply for everyone in Kitsap and Clallam counties and identified Kim WALKER, Josh FINLEY, and Curtis GRIFFIN as some of VARGO's drug customers. Based on their knowledge of previous DEA drug investigations in Kitsap County, agents knew WALKER, FINLEY, and GRIFFIN were prominent drug distributors in that area.

30.    SOI 1 also told agents that VARGO worked with multiple suppliers, to include a large drug supplier in Tacoma, Washington known as "Cash." Based on their knowledge of prominent drug distributors operating in the Tacoma area, agents believed that "Cash" was a drug supplier named Bryson GILL. In December 2022, agents

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 10
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  conducted search warrants on multiple locations associated with GILL and seized

2  approximately six hundred and fifty thousand fentanyl pills, two suspected pill presses,

3  and over thirty pounds of methamphetamine.

4      31.    SOI-1 said that VARGO also got drugs from an unknown Hispanic supplier

5  in Kent, Washington.  SOI 1 said VARGO typically picked up forty pounds of

6  methamphetamine and thousands of fentanyl pills multiple times a week from his

7  suppliers, but didn't hold onto the drugs for long.  SOI 1 said VARGO would typically

8  drive the drugs back to his residence in either Tacoma or Bremerton and instruct his

9  customers to be at the house waiting for him.  SOI 1 also said that KELLY had

10  historically been at the house in Bremerton and assisted in the distribution to customers.

11      32.    SOI 1 stated that VARGO used several phones and social media profiles,

12  such as Facebook, to communicate with drug customers and other members of the DTO.

13  SOI 1 told agents VARGO's wife, Christa Marie VARGO, was fully aware of VARGO's

14  drug operation and believed she was involved.

15  ***Information from SOI 2***

16      33.    In the middle of 2022, the Tacoma Resident Office received a tip from a

17  resident of Port Orchard, WA (SOI 2). SOI 2 said his/her daughter retold her experiences

18  to SOI 2 and SOI 2's spouse about her drug dealings. SOI 2's daughter recounted being

19  at a resident location associated with VARGO and counted as many as 23,000 fentanyl

20  pills, thousands of dollars in cash, weapons, and large quantities of methamphetamine.

21  SOI 2's daughter told SOI 2 that VARGO was "the dealer" for Kitsap and Pierce County

22  and that he gets his supplies from someone in Seattle, Washington.

23      34.    Agents believed, based on the interaction with SOI 2, that SOI 2 was a

24  concerned resident and parent who wanted to provide the information for the benefit of

25  law enforcement efforts.  In December 2022, agents conducted electronic surveillance on

26  a house associated with VARGO via a pole camera. An agent looked at the camera logs

27

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 11

USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and saw a vehicle stay overnight at the house. According to the Washington Department of Licensing database, the vehicle was registered to SOI 2's daughter.

### *CS Information on VARGO*

35.     Agents met with the CS in the middle of 2022. The CS stated that VARGO was a prominent drug supplier in Kitsap County. The CS also said VARGO moved large quantities of drugs and supplied most drug dealers in the Bremerton, Washington, area.

36.     Agents conducted a criminal history and background check on VARGO that showed he had prior convictions in 2022 for possession of a stolen vehicle, in 2021 for possession of a control substance with no prescription, in 2018 for an attempt to elude law enforcement officers, and other violations to include drug charges.

**C.    VARGO's Suspected Communications with KELLY**

37.     On December 1, 2022, agents requested the prison TRU reports and email transcripts for inmates David BERRYHILL (BOP: 50072086) and Jamie KELLY (BOP: 50073086).  The following day agents received the requested historical information.

38.     In January 2023, agents requested updated prison TRU reports and email transcripts for BERRYHILL and KELLY.  Shortly thereafter, agents received information for BERRYHILL and KELLY between December 1, 2022 and January 1, 2023.

39.     In regards to KELLY, the report listed Charles VARGO as her child at address 1334 Carr Boulevard, Bremerton, Washington, 98312 and email address yourballingmeup@gmail.com.  The phone number listed for VARGO on October 15, 2022, was 360-522-1013 (TT1). Agents conducted phone toll analysis on TT1 and learned it was a Verizon TracFone with an unknown subscriber.  The phone had been active since July 27, 2022.  Additional analysis showed the phone's top caller was phone number 360-265-4220.  Agents researched KELLY's TRU report and learned that 360-265-4220 was listed as belonging to Christa VARGO, the suspected wife of Charles

VARGO.  Based on their training and experience, phone toll analysis, and prison records, agents believed Charles VARGO was the user of **TT1**.

40.      Agents reviewed calls between TT1 and KELLY in December 2022 and heard KELLY refer to the user of **TT1** as "my son" and "Charlie/Charles" during a call on December 8, 2022.  On December 10, 2022, KELLY contacted **TT1** and referred to the user of the phone as "my son." On December 11, 2022, KELLY contacted TT1 and referred to the user of **TT1** as "Charlie." On December 15, 2022, KELLY contacted **TT1** and the user of **TT1** referred to KELLY as "mom." On December 21, 2022, KELLY contacted **TT1** and they discussed the user of **TT1** getting new phones and KELLY said it was almost time for new ones.  The user of **TT1** responded that he had been using **TT1** for a while, since he got arrested.  Based on their training and experience, agents know that drug distributors often cycle through multiple phones at any given time. Agents believed the discussion between KELLY and **TT1** about phones was indicative of behavior from experienced drug distributors.  On December 26, 2022, KELLY contacted the user of **TT1** and the user of **TT1** referred to her as "mom." On December 31, 2022, KELLY contacted the user of TT1 and told the user of **TT1** that she needed his new number.  The user of **TT1** said it was 360-535-4507 (**TT2**).  The user of **TT1** said he was also keeping **TT1** because "his court shit knew to call it." Based on their training and experience and recorded calls between KELLY and **TT1**, agents believed VARGO was using two phones, **TT1** and **TT2** for his drug operation.

**D.    BERRYHILL Communications with VARGO DTO**

41.      On December 12, 2022, BERRYHILL wrote an email to a Tony RENTER at tdc84@yahoo.com.  At the end of the email BERRYHILL said, "The boys number is 360-552-1013 (TT1), call him when you get a chance." Based on the email contents and previous prison records, agents believed BERRYHILL was referring to VARGO as "the boy" and instructing RENTER to contact him using **TT1**.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 13
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

42.     On December 13, 2022, BERRYHILL called a 360-981-0087 (TT3). Agents checked BERRYHILL's TRU prison report and learned that Lisa PARR was listed as the user of 360-981-0087 with address 2495 NE John Carlson, Bremerton, Washington.  Agents believed, based on the previous investigation of BERRYHILL, that PARR was his ex-wife.  During the call, BERRYHILL asked PARR if she had gotten any phone calls from numbers that she didn't know and PARR said "maybe." Following that, BERRYHILL asked PARR if she could take some time off work and meet his auntie in Spokane.  BERRYHILL said if PARR met his auntie in Spokane then she could drive with her to Grandma's house in Montana.  Based on their training and experience and knowledge of BERRYHILL, agents believed that BERRYHILL wanted PARR to make a drug delivery to Montana with "auntie."  Agents further believed that BERRYHILL had directed unidentified individuals to call PARR in order to set up a delivery of drugs to customers in Montana.

43.     Later in the call, BERRYHILL told PARR that the unknown phone calls she received were about puppies that were for sale.  BERRYHILL said he needed PARR to get one to two pounds of dog food for them and PARR needed to ask BERRYHILL's dad for the current prices.  Based on their training and experience, agents believed "one to two pounds of dog food" was coded drug language and that BERRYHILL was instructing PARR to acquire one to two pounds of drugs, likely methamphetamine. BERRYHILL then said it would be good if PARR did a trip to meet the dog breeder before Christmas so the dog breeders family could get comfortable with her.  Agents familiar with the BERRYHILL investigation were never aware of any association with dog breeders.  Based on the above statements, agents believed BERRYHILL wanted PARR to complete her first drug delivery to drug customers in Montana before Christmas.

44.     Later in the call, BERRYHILL said if they got an even two from his dad they would still be a little short and PARR could cover the rest.  However, the "dog

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 14
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

breeders family" had promised him sixteen.  So, once they got the sixteen, PARR could pay back the two to BERRYHILL's dad and then keep four for herself.  That would still leave eight left over.  BERRYHILL said PARR had to be honest with him and if she got sixteen she needed to be honest about it.  Based on their training and experience, agents believed BERRYHILL was explaining that the two pounds of methamphetamine would cost a little over two thousand dollars, but the profit would be sixteen thousand.  They could then repay his father his two thousand, PARR could keep four thousand, and BERRYHILL would have eight thousand.

45.    On December 14, 2022, BERRYHILL called TT3 and spoke to PARR. During the conversation, BERRYHILL asked PARR if she knew her schedule because he had everything else squared away.  BERRYHILL said that "Nick" from Port Angeles was going to come over and pick up all BERRYHILL's supplies from "Charlie" and give them to her.  BERRYHILL told PARR he needed her to convey to Nick that he needed to pick up two-pound bags from Charlie.  BERRYHILL said PARR needed to tell Nick to pick up "the boat" with the dog food from Charlie and bring it to PARR.  BERRYHILL said PARR would then go see the family.  BERRYHILL told PARR that no one had all the details so she needed to pass the information on to Nick before he met with "the boy." Based on their training and experience and the previous BERRYHILL investigation, agents believed that "Nick" was a former drug associate of BERRYHILL's named Nick ROBERTS.  Agents further believed that BERRYHILL's use of the term "boat" was coded drug language for a thousand fentanyl pills. BERRYHILL's statement to PARR that she needed to tell ROBERTS to pick up "the two pounds and the boat" when ROBERTS went to see "the boy" was coded drug language for ROBERTS to pick up two pounds of methamphetamine and a thousand fentanyl pills from VARGO.  BERRYHILL then explained that ROBERTS would deliver the drugs to PARR.

46.    Later in the call, BERRYHILL instructed PARR to call ROBERTS at 360-461-1849 and then consider when she was going to leave to see the family.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 15
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

BERRYHILL said that once PARR got to Spokane "Auntie Lulu" could help with the driving.   BERRYHILL then reiterated that PARR would get sixteen out of this, but then suggested if she grabbed the boat they could make twelve to fifteen more.  Based on their training and experience, agents believed that BERRYHILL thought they would make sixteen thousand for the two pounds of methamphetamine and twelve to fifteen thousand for the thousand fentanyl pills.  BERRYHILL later claimed this trip would set the bar for PARR going forward.  At the end of the call, PARR agreed she would contact ROBERTS.

47.    Following the call, agents conducted phone toll analysis on 360-461-1849 and confirmed it was subscribed to Nicholas ROBERTS at 1206 South Lincoln Street, Port Angeles, Washington.

48.    On December 15, 2022, BERRYHILL called PARR at TT3 and asked if anyone had called her.  PARR said no.  BERRYHILL explained he had set it up and Tony was going to come see her.  BERRYHILL said, "the boy" was going to give her the "white sweatshirts" and "the blue one" to take with her on the trip.  BERRYHILL told PARR that ROBERTS was out and then gave her a phone number, 360-621-7955, that belonged to "Tony." BERRYHILL told PARR he had talked with "Tony" and everything should have been all set.  Agents checked BERRYHILL's TRU prison report and learned a Tony RENTER was the listed user of 360-621-7955.  Agents reviewed calls between RENTER and BERRYHILL and identified an earlier call on December 15, 2022.  During that call, agents heard BERRYHILL tell RENTER that "Charlie" was onboard and ready to go and RENTER should contact him at **TT1**.  BERRYHILL told RENTER that he told "Charlie" that RENTER would be making the run to Spokane.  Based on their training and experience and the two calls on December 15, agents believed that BERRYHILL was using coded drug language when he referenced "white sweatshirts" and "the blue one." Agents believed "white sweatshirts" was a reference to the two pounds of methamphetamine and "the blue one" was a reference to the thousand fentanyl pills.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 16
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agents further believed BERRYHILL's reference to "the boy" giving PARR the sweatshirts was intended to imply that VARGO would be supplying the drugs.  Agents believed BERRYHILL's statement to RENTER about "Charlie" being onboard and ready to go was also a reference to VARGO agreeing to supply the drugs for the trip.

49.    On December 18, 2022, BERRYHILL called PARR and explained that the family from Montana had come into town to pick it up but had already left. BERRYHILL said his new plan was for "Susan" to pick up the stuff from VARGO ("the boy") and take it to PARR's house.  BERRYHILL wanted PARR to contact "Susan" and see when she would be delivering it and then PARR could take the trip.  Agents reviewed BERRYHILL's TRU prison records and learned there were multiple calls with a 360-277-1192 associated with a Susan SMITH at 78784 5th Street, Bremerton, Washington. Agents believed BERRYHILL wanted SMITH to pick up the drugs from VARGO and deliver them to PARR.

50.    On December 21, 2022, BERRYHILL contacted PARR multiple times. During a conversation at 6:17 p.m., PARR told BERRYHILL she had been in contact with his "family down south." BERRYHILL said the family was calling because they needed her address.  PARR said they needed to know how much to send.  BERRYHILL said at least "10 white sweatshirts" and at least one "brown sweatshirt" because it always had value.  Based on their training and experience, agents believed that BERRYHILL was instructing PARR to order ten pounds of methamphetamine (white sweatshirts) and one pound of heroin (brown sweatshirt).  At 8:47 p.m., BERRYHILL called TT3 to verify that she had attempted to call the people and PARR said she had.  BERRYHILL said PARR had to tell them that shipping and handling would be handled within the week and to explain everything to "Auntie Lori."  BERRYHILL said "Auntie Lori" would have "7" set aside for each one but BERRYHILL told PARR they would only bring two at a time.  Based on their training and experience, agents believed BERRYHILL and PARR were continuing to set up the parameters of supplying their drug customers in other

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 17
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

locations.  Specifically, agents believed PARR would be paid seven thousand dollars for each pound of methamphetamine but they would only deal with delivering two pounds to "Auntie Lori" at a time.

51.    On December 24, 2022, BERRYHILL called VARGO (TT1) and told VARGO that BERRYHILL's "family" was coming into town and staying at PARR's house.  BERRYHILL asked VARGO if he could drop "it" off at PARR's house.  VARGO agreed he could bring them something.  BERRYHILL asked VARGO if he was for sure and VARGO said he was for sure.  Based on their training and experience, agents believed that BERRYHILL's drug customers had come to Bremerton and were staying with PARR and that VARGO would be delivering the drugs to PARR's residence.

52.    Between December 24, 2022, to December 31, 2022, BERRYHILL continued to contact PARR and SMITH about trying to acquire drugs (sweatshirts) for his drug customers.  On January 1, 2022, at 11:49 a.m., BERRYHILL sent an email to Nelly Asevedo at mendeznellie22@gmail.com.  The email read "its 11:15 and I wanted you to know I talked to lisa finally and she broke the screen on her phone so she cant answer her phone that's why she went MIA I guess but she did finally get ahold of me and as far as I know she went shopping and picked up sweatshirts I needed so all is good I guess I just know that's just one step of the race now I gotta make sure my family gets them so I can get paid back but that's not till Thursday so enjoy your day love." Based on the contents of the email, agents believed Lisa PARR had picked up the drugs (sweatshirts), likely from VARGO, and was ready to transport them to BERRYHILL's drug customers.  Agents further believed that BERRYHILL thought PARR would be traveling on January 4, 2022.

53.    Based on my training, experience, and knowledge of this investigation, I believe the requested pen register and trap and trace device and real-time GPS location on **TT1** and **TT2** will be relevant to the ongoing investigation in that it will assist in identifying individuals with whom VARGO is in contact, other locations frequented by

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 18
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

members of the VARGO DTO, and provide opportunities for future physical surveillance of co-conspirators and search warrants of locations used in the trafficking of controlled substances.

***Further investigation into TT1 and TT2***

54.    On January 27, 2023, United States Magistrate Judge, the Honorable Michelle L. Peterson authorized a search warrant and pen-trap order for **TT1** and **TT2**. A couple of days later, agents began receiving location information on the phones.

55.    Between late January and early February 2023, agents have consistently reviewed location information from **TT1** and **TT2**. They have observed the phones are turned on and off sporadically during any given day. Based on their training and experience, agents believed VARGO was likely rotating phones in order to conceal his activities from law enforcement. Agents observed when the phones were powered on, location information indicated they were in Kitsap County, in the vicinity of Port Orchard or Bremerton, which is consistent with where the CS and SOI's indicated VARGO was living.

56.    On February 15, 2023, I reviewed the previous search warrant authorized by the Honorable Michelle L. Peterson for the search and pen trap order of **TT1** and **TT2**. The search warrant execution had the restriction of being executed in the daytime between 6:00 a.m. to 10:00 p.m. The government intended on checking the box, "at any time in the day or night because good cause has been established." This is due to the nature of the requested search warrant and pen-trap order where it is necessary to an investigation of this nature to receive updates 24 hours a day.

***Identification of TT4***

57.    In mid-January 2023, agents requested updated prison TRU reports and email transcripts for inmates David BERRYHILL (BOP: 50072086) and Jamie KELLY (BOP: 50073086). Shortly thereafter, agents received the requested historical information for January 2023.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 19
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

58.    In early February 2023, agents reviewed KELLY's email and calls from January 2023.  They learned that on January 15, 2023, KELLY made a call to VARGO (TT1) at 5:50 p.m.  Agents reviewed the call and learned at approximately the 8:11 mark of the call, VARGO and KELLY had the following interaction:

- VARGO (TT1): I need you to take down these numbers.
- VARGO (TT1): Got a pen?
- KELLY: Hold on no, hold on.
- KELLY: Ok, go ahead.
- VARGO: **360-620-9485 (TT4)**
- KELLY: Who's that?
- VARGO: That is uh, pretty sure that's me.
- KELLY: K.
- VARGO: I just bought a I-phone 14 pro.
- KELLY: Oh, do you like it?
- VARGO: I don't know, only had it for 20 minutes.
- KELLY: Ok.
- VARGO: And uh….**9485** yup….and then uh, 360-731-2457.
- KELLY: Yeah.
- VARGO: That's my wife.
- KELLY: Ok, and yours is **9485**?
- VARGO: Yeah, **620-9485**.
- KELLY: **620-9485**, ok I shall update my files accordingly.
- VARGO: God damn right.
- KELLY: Is this phone going to be good for a while or no?
- VARGO: I have like seven phones right now.
- KELLY: Ok.

59.     Based on their training and experience and the contents of the call between KELLY and VARGO on January 15, 2023, agents believed VARGO had acquired an additional cell phone with number **360-620-9485 (TT4).**   Agents further believed that VARGO was currently using seven phones to communicate with his associates, which is common for individuals engaged in large scale drug distribution.

60.     Based on my training, experience, and knowledge of this investigation, I believe the requested pen register and trap and trace device and real-time GPS location data on **TT4** will be relevant to the ongoing investigation in that it will assist in identifying individuals with whom VARGO is in contact, other locations frequented by members of the VARGO DTO, and provide opportunities for future physical surveillance of co-conspirators and search warrants of locations used in the trafficking of controlled substances.

## BACKGROUND ON CELLPHONE PROVIDERS

61.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.

62.     Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 21
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

matter of course. The unique identifiers—as transmitted from a cell phone to a cellular antenna or tower—are like the telephone number of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

63.    Based on my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

64.    Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network. When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

65.    In my training and experience, I have learned that Verizon Wireless ("Verizon") is a company that provides cellular telephone access to the general public. I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 22

USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information" or cell tower/sector records). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

66.     Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the Target Telephone, including by initiating a signal to determine the location of the Target Telephone is on the provider's network or with such other reference points as may be reasonably available.

67.     When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application-initiated data transfers, among other things.

68.     Based on my training and experience, I know that Verizon can collect cell-site data about the Target Telephone. Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 23
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  normal course of business in order to use this information for various business-related

2  purposes.

3      69.    Different service providers use different systems, applications, and reports

4  to collect or analyze cell site data. These systems, applications, and reports are referred to

5  by a variety of names including, but not limited to real-time tool or "RTT" (Verizon),

6  Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD"

7  (Sprint), Location Database of Record or "LOCDBOR" (AT&T), EVDO, ALULTE,

8  Timing Advance and True Call (T-Mobile/Sprint/US Cellular/GCI). RTT data, for

9  example, estimates the approximate distance of the cellular device from a cellular tower

10  based upon the speed with which signals travel between the device and the tower. This

11  information can be used to estimate an approximate location range that is more precise

12  than typical cell-site data.

13      70.    Based on my training and experience, I know that wireless providers such

14  as Verizon typically collect and retain information about their subscribers in their normal

15  course of business. This information can include basic personal information about the

16  subscriber, such as name and address, and the method(s) of payment (such as credit card

17  account number) provided by the subscriber to pay for wireless communication service. I

18  also know that wireless providers such as Verizon typically collect and retain information

19  about their subscribers' use of the wireless service, such as records about calls or other

20  communications sent or received by a particular device and other transactional records, in

21  their normal course of business. In my training and experience, this information may

22  constitute evidence of the crimes under investigation because the information can be used

23  to identify the Target Telephone's user or users and may assist in the identification of co-

24  conspirators and/or victims.

25      71.    Modern cell phones allow users to switch their telephone numbers, use

26  multiple telephone numbers on a single device, and transfer their telephone number to a

27  different cell phone. These changes can be made with the assistance of the wireless

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 24

USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  provider or by taking actions such as changing the "SIM card" (short for "subscriber

2  identity module card") of a cellphone. To provide for any such changes made to the

3  Target Telephone, Attachment A specifies that the property to be searched includes:

4  (i) any instrument to which the listed target telephone number was assigned within the

5  last 30 days, and that now has been assigned a changed telephone number, (ii) any

6  changed telephone number assigned to an instrument now bearing the same unique

7  identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number

8  listed above, or that was bearing the same unique identifying number as the telephone

9  number listed above, at any point within the last 30 days, (iii) any changed unique

10  identifying number subsequently assigned to the same telephone number, or (iv) any

11  additional changed telephone number and/or unique identifying number, whether the

12  changes occur consecutively or simultaneously, listed to the same subscriber and wireless

13  telephone account number as the telephone numbers listed above, within the period of

14  disclosure authorized by this warrant.

## AUTHORIZATION REQUESTS

16  72.  Based on the foregoing, I request that the Court issue the proposed search

17  warrant and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C.

18  § 2703(c), and 18 U.S.C. § 3123.

19  73.  I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of

20  Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to

21  delay notice to the subscriber or user of the Target Telephones until 90 days after the

22  collection authorized by the warrant has been completed. There is reasonable cause to

23  believe that providing immediate notification of the warrant may have an adverse result,

24  as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of

25  the Target Telephones would seriously jeopardize the ongoing investigation, as such a

26  disclosure would give that person an opportunity to destroy evidence, change patterns of

27  behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 25
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

further specified in Attachment B, which is incorporated into the proposed warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrants authorize the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

74.    I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon services, including by initiating a signal to determine the location of the Target Telephone on Verizon's networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The agency shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

75.    Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the warrant on Verizon. Because the warrant will be served on Verizon, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephones outside of daytime hours.

//
//
//
//
//

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 26
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    76.    I further request that the Court order that all papers in support of this

2  Application, including the Affidavit, Search Warrant, and Pen/Trap Order, and all related

3  documents, be sealed until further order of the Court. These documents discuss an

4  ongoing criminal investigation that is neither public nor known to all of the targets of the

5  investigation. Accordingly, there is good cause to seal these documents because their

6  premature disclosure may seriously jeopardize that investigation.

7

8  _____

9  STEVEN MEYER, Affiant
   Special Agent
   Drug Enforcement Administration

10

11    The above-named agent provided a sworn statement to the truth of the foregoing

12  affidavit by telephone on this 16th day of February, 2023.

13

14

15  _____

16  Michelle L. Peterson
   United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 27
USAO # 2022RO1233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**EXHIBIT 1**

<u>DECLARATION</u>

I, Jocelyn Cooney, declare as follows:

1.      I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.      I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.

3.      Pursuant to 18 U.S.C. § 3122(b), I certify that the Drug Enforcement Administration is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 16th day of February, 2023.

*/s/ Jocelyn Cooney*
Jocelyn Cooney
Assistant United States Attorney

Exhibit 1 - Declaration -- PAGE 1

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A-1

### Property to Be Searched and Subscriber/Subject Information

1.      Records and information associated with the following cellular phone: **Target Telephone 1** (hereinafter referred to as **TT1**), assigned call number **(360) 552-1013**, with no listed subscriber, that are in the custody or control of Verizon Wireless a company headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The subscriber/customer of **TT1** is believed to be used by Charlie VARGO. The identity of the person who is the subject of the criminal investigation is Charlie VARGO.

2.      The Target Telephone (**TT1**).

3.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B-1**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding Target Telephone 1. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.    Section I: Information to be Disclosed by Verizon Wireless**

1.    **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A-1:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long-distance telephone connection records beginning on June 15, 2022, through the date this warrant is served;

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions beginning on June 15, 2022, through the date this warrant is served;

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers

("IMSI"), or International Mobile Equipment Identities ("IMEI");

       g.    Other subscriber numbers or identities (including the registration

Internet Protocol ("IP") address); and

       h.    Means and source of payment for such service (including any credit

card or bank account number) and billing records.

    2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records**
**to Be Provided for a Period of 45 Days.**

       a.    Verizon Wireless shall install and monitor pen-trap devices to

record, decode, and/or capture dialing, routing, addressing, and signaling information

associated with each communication to or from the Target Telephone including the date,

time, and duration of the communication, and the following, without geographic limit and

without notice to the subscriber:

        (i)    IP addresses associated with the cell phone device or devices
used to send or receive electronic communications;

        (ii)    Any unique identifiers associated with the cell phone device or
devices used to make and receive calls with the cell phone
number described in Attachment A-1, or to send or receive
other electronic communications, including the ESN, MEIN,
IMSI, IMEI, SIM, MSISDN, or MIN;

        (iii)    IP addresses of any websites or other servers to which the cell
phone device or devices connected; and

        (iv)    Source and destination telephone numbers and email
addresses.

       b.    On a 24-hour-a-day basis, for the duration of the authorized pen-trap

devices, Verizon Wireless shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices: published or non-published subscriber names and addresses, including billing addresses.

3.    **Historical Cell Site Location Information.**

a.    All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account from June 15, 2022, through the date this warrant is served, including:

i.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.    historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received. This information is to be provided irrespective of the application, name, or report utilized by Verizon Wireless. Accordingly, this information includes the following data sets to the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.    The physical address and coverage maps of cell towers used by the Target Telephone.

4.    **Prospective Cell Site Location Information.**

a.    All information about the location of the Target Telephone described in Attachment A for **a period of 45 days**, during all times of day and night. This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A-1. This information also includes the following data sets to

Attachment A -- PAGE 3

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD, LOCDBOR,

2  EVDO, True Call, ALULTE, and Timing Advance.

3        b.     The physical address and coverage maps of cell towers used by the

4  Target Telephone.

5        5.     **Prospective E-911/GPS and Cell Site Triangulation Information.**

6        a.     All information about the location of the Target Telephone described

7  in Attachment A-1 for **a period of 45 days**, during all times of day and night. This

8  information includes: all available E-911 Phase II data, GPS data, latitude-longitude data,

9  and other precise location information, as well as all data about which "cell towers" (i.e.,

10  antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the

11  towers) received a radio signal from the cellular telephone(s) or account(s) described in

12  Attachment A-1.

13        b.     The physical address and coverage maps of cell towers used by the

14  Target Telephone.

15        To the extent that the location information described in the previous paragraphs

16  (hereinafter, "Location Information") is within the possession, custody, or control of

17  Verizon Wireless, Verizon Wireless is required to disclose the Location Information to

18  the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2)

19  and 3124(a)-(b), Verizon Wireless must furnish the government all information, facilities,

20  and technical assistance necessary to accomplish the collection of the Location

21  Information unobtrusively and with a minimum of interference with Verizon Wireless's

22  services. The government shall compensate Verizon Wireless for reasonable expenses

23  incurred in furnishing such facilities or assistance.

24  II.    **Section II: Information to Be Seized by the Government**

25        1.     All information described above in Section I that constitutes evidence of

26  violations of 21 U.S.C. §§ 841 and 846 involving the user of **TT1** and the user's

27

1    associates.

2        2.    All non-content subscriber/account information provided pursuant to 18

3    U.S.C. § 2703(c).

4        3.    All non-content dialing, routing, addressing, and signaling information

5    provided pursuant to 18 U.S.C. §§ 3121-3127.

6        4.    Location Information regarding the Target Telephone.

7        Law enforcement personnel (who may include, in addition to law enforcement

8    officers and agents, attorneys for the government, attorney support staff, agency

9    personnel assisting the government in this investigation, and outside technical experts

10   under government control) are authorized to review the records produced by Verizon

11   Wireless in order to locate the things particularly described in this Warrant.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Attachment A -- PAGE 5
USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A-2

### Property to Be Searched and Subscriber/Subject Information

5.      Records and information associated with the following cellular phone: **Target Telephone 2** (hereinafter referred to as **TT2**), assigned call number **(360) 535-4507**, with no listed subscriber, that are in the custody or control of Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The subscriber/customer of **TT2** is believed to be Charles VARGO. The identity of the person who is the subject of the criminal investigation is Charles VARGO.  and believed to be used by Charles VARGO.

6.      The Target Telephone (**TT2**).

7.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

Attachment A -- PAGE 6
USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B-2**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding Target Telephone 2. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.    Section I: Information to be Disclosed by Verizon Wireless**

8.    **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A-2:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long-distance telephone connection records beginning on June 15, 2022, through the date this warrant is served;

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions beginning on June 15, 2022, through the date this warrant is served;

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

2  Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers

3  ("IMSI"), or International Mobile Equipment Identities ("IMEI");

4          g.    Other subscriber numbers or identities (including the registration

5  Internet Protocol ("IP") address); and

6          h.    Means and source of payment for such service (including any credit

7  card or bank account number) and billing records.

8      9.   **Pen Register/ Trap and Trace Data and Associated Subscriber Records**

9  **to Be Provided for a Period of 45 Days.**

10         a.    Verizon Wireless shall install and monitor pen-trap devices to

11  record, decode, and/or capture dialing, routing, addressing, and signaling information

12  associated with each communication to or from the Target Telephone including the date,

13  time, and duration of the communication, and the following, without geographic limit and

14  without notice to the subscriber:

15               (v)    IP addresses associated with the cell phone device or devices

16                      used to send or receive electronic communications;

17               (vi)   Any unique identifiers associated with the cell phone device or

18                      devices used to make and receive calls with the cell phone

19                      number described in Attachment A-2, or to send or receive

20                      other electronic communications, including the ESN, MEIN,

21                      IMSI, IMEI, SIM, MSISDN, or MIN;

22              (vii)  IP addresses of any websites or other servers to which the cell

23                      phone device or devices connected; and

24              (viii)  Source and destination telephone numbers and email

25                      addresses.

26         b.    On a 24-hour-a-day basis, for the duration of the authorized pen-trap

27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  devices, Verizon Wireless shall provide the following records for those subscribers

2  whose identifiers are obtained pursuant to the use of the pen-trap devices: published or

3  non-published subscriber names and addresses, including billing addresses.

4        10.    **Historical Cell Site Location Information.**

5        a.    All records and other information (**not including the contents of**

6  **communications**) relating to wire and electronic communications sent or received by the

7  Account from June 15, 2022, through the date this warrant is served, including:

8        i.    the date and time of the communication, the method of the

9  communication, and the source and destination of the communication (such as the source

10  and destination telephone numbers (call detail records), email addresses, and IP

11  addresses); and

12        ii.    historical cell site information regarding the cell tower and

13  antenna face (also known as "sectors") through which the communications were sent and

14  received. This information is to be provided irrespective of the application, name, or

15  report utilized by Verizon Wireless. Accordingly, this information includes the following

16  data sets to the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD,

17  LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

18        b.    The physical address and coverage maps of cell towers used by the

19  Target Telephone.

20        11.    **Prospective Cell Site Location Information.**

21        a.    All information about the location of the Target Telephone described

22  in Attachment A-2 for **a period of 45 days**, during all times of day and night. This

23  information includes: precise location information, as well as all data about which "cell

24  towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces

25  of the towers) received a radio signal from the cellular telephone(s) or account(s)

26  described in Attachment A-2. This information also includes the following data sets to

27

Attachment B -- PAGE 3

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD, LOCDBOR,

2  EVDO, True Call, ALULTE, and Timing Advance.

3         b.    The physical address and coverage maps of cell towers used by the

4  Target Telephone.

5         12.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

6         a.    All information about the location of the Target Telephone described

7  in Attachment A-2 for **a period of 45 days**, during all times of day and night. This

8  information includes: all available E-911 Phase II data, GPS data, latitude-longitude data,

9  and other precise location information, as well as all data about which "cell towers" (i.e.,

10 antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the

11 towers) received a radio signal from the cellular telephone(s) or account(s) described in

12 Attachment A-2.

13        b.    The physical address and coverage maps of cell towers used by the

14 Target Telephone.

15        To the extent that the location information described in the previous paragraphs

16 (hereinafter, "Location Information") is within the possession, custody, or control of

17 Verizon Wireless, Verizon Wireless is required to disclose the Location Information to

18 the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2)

19 and 3124(a)-(b), Verizon Wireless must furnish the government all information, facilities,

20 and technical assistance necessary to accomplish the collection of the Location

21 Information unobtrusively and with a minimum of interference with Verizon Wireless's

22 services. The government shall compensate Verizon Wireless for reasonable expenses

23 incurred in furnishing such facilities or assistance.

24 **II.    <u>Section</u> II: Information to Be Seized by the Government**

25        All information described above in Section I that constitutes evidence of violations

26 of 21 U.S.C. §§ 841 and 846 involving the user of **TT2** and the user's associates.

27

Attachment B -- PAGE 4

USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13.     All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

14.     All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

15.     Location Information regarding the Target Telephone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Verizon Wireless in order to locate the things particularly described in this Warrant.

Attachment B -- PAGE 5
USAO # 2022R01233

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A-3

### Property to Be Searched and Subscriber/Subject Information

1.      Records and information associated with the following cellular phone: **Target Telephone 4** (hereinafter referred to as **TT4**), assigned call number **360-620-9485 (TT4)**, with an unknown subscriber, that are in the custody or control of Verizon Wireless a company headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The subscriber/customer of **TT4** is believed to be Charles VARGO. The identity of the person who is the subject of the criminal investigation is Charlie VARGO.

2.      The Target Telephone (**TT4**).

3.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B-3**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding Target Telephone 4. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.    Section I: Information to be Disclosed by Verizon Wireless**

1.    **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

    a.    Names (including subscriber names, user names, and screen names);

    b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    c.    Local and long-distance telephone connection records beginning on June 15, 2022, through the date this warrant is served;

    d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions beginning on June 15, 2022, through the date this warrant is served;

    e.    Length of service (including start date) and types of service utilized;

    f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers

("IMSI"), or International Mobile Equipment Identities ("IMEI");

        g.     Other subscriber numbers or identities (including the registration

Internet Protocol ("IP") address); and

        h.     Means and source of payment for such service (including any credit

card or bank account number) and billing records.

    2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records**

**to Be Provided for a Period of 45 Days.**

        a.     Verizon Wireless shall install and monitor pen-trap devices to

record, decode, and/or capture dialing, routing, addressing, and signaling information

associated with each communication to or from the Target Telephone including the date,

time, and duration of the communication, and the following, without geographic limit and

without notice to the subscriber:

           (i)    IP addresses associated with the cell phone device or devices

                  used to send or receive electronic communications;

           (ii)   Any unique identifiers associated with the cell phone device or

                  devices used to make and receive calls with the cell phone

                  number described in Attachment A, or to send or receive other

                  electronic communications, including the ESN, MEIN, IMSI,

                  IMEI, SIM, MSISDN, or MIN;

           (iii)  IP addresses of any websites or other servers to which the cell

                  phone device or devices connected; and

           (iv)  Source and destination telephone numbers and email

                  addresses.

        b.     On a 24-hour-a-day basis, for the duration of the authorized pen-trap

1  devices, Verizon Wireless shall provide the following records for those subscribers

2  whose identifiers are obtained pursuant to the use of the pen-trap devices: published or

3  non-published subscriber names and addresses, including billing addresses.

4      3.  **Historical Cell Site Location Information.**

5          a.  All records and other information (**not including the contents of**

6  **communications**) relating to wire and electronic communications sent or received by the

7  Account from June 15, 2022, through the date this warrant is served, including:

8              i.  the date and time of the communication, the method of the

9  communication, and the source and destination of the communication (such as the source

10 and destination telephone numbers (call detail records), email addresses, and IP

11 addresses); and

12             ii.  historical cell site information regarding the cell tower and

13 antenna face (also known as "sectors") through which the communications were sent and

14 received. This information is to be provided irrespective of the application, name, or

15 report utilized by Verizon Wireless. Accordingly, this information includes the following

16 data sets to the extent that they are collected by Verizon Wireless: RTT, PLU, PCMD,

17 LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

18         b.  The physical address and coverage maps of cell towers used by the

19 Target Telephone.

20     4.  **Prospective Cell Site Location Information.**

21         a.  All information about the location of the Target Telephone described

22 in Attachment A for **a period of 45 days**, during all times of day and night. This

23 information includes: precise location information, as well as all data about which "cell

24 towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces

25 of the towers) received a radio signal from the cellular telephone(s) or account(s)

26 described in Attachment A. This information also includes the following data sets to the

1  extent that they are collected by Verizon Wireless: RTT, PLU, PCMD, LOCDBOR,

2  EVDO, True Call, ALULTE, and Timing Advance.

3      b.    The physical address and coverage maps of cell towers used by the

4  Target Telephone.

5      5.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

6      a.    All information about the location of the Target Telephone described

7  in Attachment A for **a period of 45 days**, during all times of day and night. This

8  information includes: all available E-911 Phase II data, GPS data, latitude-longitude data,

9  and other precise location information, as well as all data about which "cell towers" (i.e.,

10  antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the

11  towers) received a radio signal from the cellular telephone(s) or account(s) described in

12  Attachment A.

13      b.    The physical address and coverage maps of cell towers used by the

14  Target Telephone.

15      To the extent that the location information described in the previous paragraphs

16  (hereinafter, "Location Information") is within the possession, custody, or control of

17  Verizon Wireless, Verizon Wireless is required to disclose the Location Information to

18  the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2)

19  and 3124(a)-(b), Verizon Wireless must furnish the government all information, facilities,

20  and technical assistance necessary to accomplish the collection of the Location

21  Information unobtrusively and with a minimum of interference with Verizon Wireless's

22  services. The government shall compensate Verizon Wireless for reasonable expenses

23  incurred in furnishing such facilities or assistance.

24  II.    <u>**Section**</u> **II: Information to Be Seized by the Government**

25      1.    All information described above in Section I that constitutes evidence of

26  violations of 21 U.S.C. §§ 841 and 846 involving the user of **TT4** and the user's

27

Attachment B -- PAGE 4

USAO # 2022R01233

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1  associates.

2       2.     All non-content subscriber/account information provided pursuant to 18

3  U.S.C. § 2703(c).

4       3.     All non-content dialing, routing, addressing, and signaling information

5  provided pursuant to 18 U.S.C. §§ 3121-3127.

6       4.     Location Information regarding the Target Telephone.

7       Law enforcement personnel (who may include, in addition to law enforcement

8  officers and agents, attorneys for the government, attorney support staff, agency

9  personnel assisting the government in this investigation, and outside technical experts

10  under government control) are authorized to review the records produced by Verizon

11  Wireless in order to locate the things particularly described in this Warrant.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970